**Saro DAGHLIAN on behalf of himself and all others similarly situated, Plaintiff,**

v.

**DEVRY UNIVERSITY, INC., Devry Inc., and Does 1 through and including 100, Defendants.**

**No. CV 06–994 MMM (PJWx).**

United States District Court, C.D. California.

Oct. 10, 2007.

Order Denying Reconsideration, Feb. 19, 2008.

Janet Lindner Spielberg, Janet L. Spielberg Law Offices, Michael D. Braun, Braun Law Group PC, Los Angeles, CA, for Plaintiff.

Amir Shlesinger, Deborah E. Yim, Felicia Yu, Jordan Seungjin Yu, Van T. Lam, Reed Smith, Los Angeles, CA, for Defendants.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

MARGARET M. MORROW, District Judge.

On December 23, 2005, Saro Daghlian commenced this putative class action against DeVry University, Inc., DeVry Inc. (collectively "DeVry" or "defendants"), and certain fictitious defendants in Los Ange-

les Superior Court.[1] On January 11, 2006, plaintiff filed a first amended complaint. Plaintiff alleges that defendants failed to comply with a statutory mandate that they disclose in writing that academic units earned at DeVry probably would not transfer to other educational institutions and that students who sought further education elsewhere would thus have to earn the units anew. The complaint pleads four claims: (1) assorted violations of the California Education Code; (2) violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750–1784;[2] (3) false advertising in violation of California's False Advertising Law ("FAL"), California Business & Professions Code § 17500; and (4) unlawful, unfair, and deceptive business practices in violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200.

On June 12, 2007, the court granted plaintiff's renewed[3] motion for class certification, certifying a class of all students who had enrolled and paid tuition at a California DeVry school since December 23, 2001. The court concluded that plaintiff's claim for restitution and injunctive relief under the "unlawful" prong of the UCL—predicated on defendants' purported failure to provide enrolling students the written disclosure mandated by California Education Code § 94816 (the "Transferability Disclosure")—was suitable for classwide adjudication under subdivisions (a) and (b)(2) of Rule 23 of the Federal Rules of Civil Procedure.

On July 16, 2007, defendants filed a motion for summary judgment. Defendants contend that the statutory provisions underlying both plaintiff's individual claims under the Education Code and his class claims under the UCL are unconstitutional under the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, the Equal Protection Clause, U.S. Const., amend. 14, § 1, and the First Amendment, U.S. Const., amend. 1, as made applicable to the states through the Fourteenth Amendment. Defendants additionally argue, as respects plaintiff's UCL class claim, that he has no evidence that he or any member of the UCL class he represents is entitled to restitutionary relief, and that he lacks standing to seek injunctive relief.

## I. FACTUAL BACKGROUND

Illinois-based DeVry University, Inc. is in the business of providing educational services throughout the United States.[4] It has campuses in twenty-five states across the country, including nine campuses in California, and is regionally accredited by the North Central Association Commission of Colleges and Schools ("NCA").[5] The NCA is one of six non-governmental regional accrediting agencies that operate independently in six different geographic

1. Defendants removed the action to federal court on February 17, 2006.

2. On July 20, 2006, the court dismissed plaintiff's CLRA claim as untimely.

3. The court denied plaintiff's first motion for class certification on March 14, 2007.

4. Defendants DeVry University, Inc.'s And DeVry Inc.'s Separate Statement of Uncontroverted Facts ("Defs.' Facts"), ¶¶ 14–15; Plaintiff's Statement of Genuine Issues of Material Facts in Support of Opposition to Defendants' Motion for Summary Judgment, or Alternatively, Summary Adjudication ("Pl.'s Facts"), ¶¶ 14–15. DeVry, Inc. is a Delaware corporation and the holding company for DeVry University, Inc. (Defs.' Facts, ¶ 14; Pl.'s Facts, ¶ 14.)

5. Defs.' Facts, ¶¶ 16, 19; Pl.'s Facts, ¶¶ 16, 19.

regions.[6] The NCA's region comprises nineteen states, including Illinois.[7] Its counterpart for the region that includes California is the Western Association of Schools and Colleges ("WASC").[8] Although the WASC region also includes Hawaii, the territories of Guam, American Samoa, the Federated States of Micronesia, the Republic of Palau, the Commonwealth of the Northern Marianas Islands, and other areas in the Pacific or East Asia where American or international edu-

cational institutions operate,[9] the vast majority (i.e., over ninety-one percent) of WASC-accredited educational institutions are located in California.[10]

In 1989, the California legislature enacted the Private Postsecondary and Vocational Education Reform Act (the "Reform Act"), 1989 Cal. Stat. ch. 1307 (S.B.190) (codified as amended at Cal. Educ.Code §§ 94700–94999).[11] As amended, the Reform Act completely exempts WASC-ac-

---

6. Defs.' Facts, ¶ 37; Pl.'s Facts, ¶ 37.

7. Defs.' Facts, ¶ 20; Pl.'s Facts, ¶ 20.

8. Defs.' Facts, ¶¶ 1–2; Pl.'s Facts, ¶¶ 1–2.

9. Defs.' Facts, ¶ 2; Pl.'s Facts, ¶ 2.

10. Defs.' Facts, ¶ 3 ("All but 9 of the 151 senior colleges and universities accredited by WASC are California schools," citing Defendant DeVry University, Inc.'s and DeVry, Inc.'s Request for Judicial Notice in Support of Motion for Summary Judgment, or Alternatively, for Summary Adjudication of Claims ("Defs.' RJN"), Exhibit K: WASC Accrediting Comm'n for Senior Colleges and Univs., *Member Directory*, available at http://www.wascweb.org/2005_2006SeniorDirectory.pdf (last visited Aug. 28, 2007)); *id.*, ¶ 5 ("All but 14 of the 140 WASC junior colleges are California schools," citing Defs.' RJN, Exhibit L: WASC Accrediting Comm'n for Community and Junior Colleges, *Accredited Institutions*, available at http://www.accjc.org/list_accred_coll.htm (last visited Aug. 28, 2007)). Plaintiff "opposes" these facts, but does not explain how they are inaccurate or provide any evidence to contradict them. (See Pl.'s Facts, ¶¶ 3, 5.) The court consequently treats the facts as uncontroverted.

11. On July 1, 2007, the Reform Act became "inoperative." See CAL. EDUC.CODE § 94999. It will be repealed on January 1, 2008 unless the California legislature "deletes or extends the dates on which it becomes inoperative and is repealed" prior to that date. *Id.* On September 30, 2006, Governor Arnold Schwarzenegger vetoed Assembly Bill 2810, which would have extended the Reform Act's

operative date to July 1, 2008. (See Defs.' RJN, Exhibit F: Complete Bill History for A.B. 2810.) On February 23, 2007, Senator Don Perata introduced Senate Bill 823, which is intended to "recast, revise, and reenact" the Reform Act. (See *id.*, Exhibit B: California Private Postsecondary Education Act of 2007 (S.B.823).) On August 20, 2007, a fifth amended version of the bill was introduced, and is still pending in the legislature. (See Plaintiff's Supplemental Request for Judicial Notice in Support of Plaintiff's Opposition to DeVry University, Inc.'s and DeVry Inc.'s Motion for Summary Judgment, or Alternatively, Summary Adjudication, Exhibit A: Senate Bill 823 ("S.B.823").) S.B. 823 would require non-WASC regionally accredited educational institutions to continue to observe various "student protection" measures. (See *id.*, § 4, Sec. 94841(b)(1)(A) (partially exempting non-WASC regionally accredited educational institutions from the requirements of the act), *id.*, Sec. 94890(b) ("[Article 5, Student Protections] shall also apply to all institutions that are exempt from this chapter under subparagraph (A) of paragraph (1) of subdivision (b) of Section 94841").) Among the student protection measures that would apply to non-WASC accredited schools is a requirement that regulated postsecondary educational institutions give prospective students a written disclosure regarding the transferability of credits. (See *id.*, Sec. 94894.) This disclosure is substantially similar to the disclosure currently required by § 94816. The bill provides a private right of action for violation of its student protection provisions, entitling aggrieved students to a full tuition refund, damages, equitable relief, attorneys' fees and costs. (*Id.*, Sec. 95014.) WASC-accredited educational institutions would remain exempt from the student-pro-

credited educational institutions from its student protection provisions. See Cal. Educ.Code § 94739(b)(7). As the court found in an earlier order, however, it requires non-WASC regionally accredited educational institutions to comply with those provisions, including one that requires giving prospective students the Transferability Disclosure.[12] At the time the Reform Act was originally enacted, the California legislature may have believed that WASC was superior to other regional accreditation bodies;[13] it has since recog-

nized, however, that there is "no clear rationale" for exempting some regionally accredited schools but not others from the student protection provisions of the Reform Act.[14]

The parties dispute whether DeVry University is eligible for WASC accreditation. Defendants have adduced evidence that DeVry is not eligible for regional accreditation by WASC because it is not based in the WASC region.[15] Plaintiff, however, has submitted evidence that DeVry might

tection provisions of the act. (*Id.*, Sec. 94841(a)(6)-(7).)

12. See Order Granting in Part and Denying in Part Defendants' Motion To Dismiss First Amended Complaint at 29–45. As the court there observed: "Both the text and legislative history of the Reform Act support Daghlian's contention that, notwithstanding DeVry's status as a nonWASC regionally accredited institution, it must provide students with written notification regarding the transferability of credits, supply prospective students with a brochure or catalogue disclosing all material facts reasonably likely to affect their decision to enroll, and refrain from engaging in false and misleading advertising." (*Id.* at 43.)

13. See Declaration of Michael D. Braun in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or Alternatively, Summary Adjudication ("Braun Decl."), Exhibit J: Cal. Postsecondary Educ. Comm'n, *Public Policy Accreditation & State Approval in California* 62 (1984) ("Considerable variation exists in the accreditation standards utilized by the six regional accrediting associations. The Western and Southern Associations, particularly the former, have the most detailed and specific set of standards. At the other end of the spectrum, the North Central Association does not have standards for accreditation but rather utilizes four 'intentionally general' evaluative criteria to make judgments about institutions .... This variation in the accrediting standards is one reason why the various cooperative agreements among the six regional accrediting associations has not produced an adequate level of oversight of accredited out-of-state institutions operating in California").

14. See Defs.' RJN, Exhibit C: Assembly Comm. on Appropriations Analysis of S.B. 1544 [2004 Cal. Stat. ch. 1544], at 3 (Aug. 4, 2004) (citing Joint Legislative Sunset Review Committee 2003 Report). The court must disagree with plaintiff's contention that this aspect of the Reform Act's legislative history has "no relevance to this matter." (See Pl.'s Facts, ¶ 12.) It is well-settled that California legislative committee reports and analyses are competent legislative history). See, e.g., *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 133 Cal.App.4th 26, 32, 34 Cal.Rptr.3d 520 (2005) (citing *Hutnick v. U.S. Fidelity & Guaranty Co.*, 47 Cal.3d 456, 465 n. 7, 253 Cal.Rptr. 236, 763 P.2d 1326 (1988) ("[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history ..." (collecting cases)). Here, the Assembly Committee report on S.B. 1544, which amended the "sunset" provision of the Reform Act to its current form (see 2004 Cal. Stat. ch. 1544 (S.B.1544), § 7), reflects that the legislature chose to extend the expiration date of the Reform Act despite the expressed view of the Joint Legislative Sunset Review Committee that the Reform Act's patchwork of exemptions and partial exemptions from various requirements was not justified by any "clear rationale." As explained below, this is clearly relevant in examining defendants' challenge to the constitutionality of the student protection provisions of the Reform Act.

15. Defs.' Facts, ¶ 7 (citing Defs.' RJN, Exhibit M:WASC Accrediting Comm'n for Senior Colleges and Univs., *How To Become Accredited* at 1 (rev.Aug.2006); and *id.*, Exhibit N, WASC Accrediting Comm'n for Community

"transfer" its accreditation from NCA to WASC.[16] While the criteria that must-be satisfied to "transfer" accreditation are not entirely clear,[17] the "transfer" procedure was not available to DeVry until at the earliest June 2007.[18]

## II. DISCUSSION

### A. Legal Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.

See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See *id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the

---

and Junior Colleges, *Accreditation Reference Handbook* at 5 (Aug.2006)).

**16.** Pl.'s Facts, ¶ 7 (citing Braun Decl., Exhibit F: *WASC/ACSCU Policy on Transfer of Accreditation* ). The *Policy on Transfer of Accreditation* has not, as defendants recognize, been properly authenticated, as Braun does not state how he came into possession of the document or otherwise establish that it describes an officially promulgated WASC policy. See FED.R.EVID. 901. Nor is the document self-authenticating. See FED.R.EVID. 902. Defendants apparently do not object to consideration of the document, however, as they recognize that it will not affect the disposition of their motion for summary judgment.

**17.** The *Policy on Transfer of Accreditation* provides that "[t]he unit(s) within the WASC region seeking transfer must qualify under the Policy on Separate Accreditable Units" in the "*2001 Handbook.*" (See Braun Decl., Exhibit F: *WASC/ACSCU Policy on Transfer of Accred-*

*itation.*) That Handbook, in turn, provides that "[a]n instructional site located in a region other than that of its home campus [may] seek separate accreditation in the region is exists if it functions independently of operational control of the parent college or university." (See Defendant DeVry University, Inc. and DeVry, Inc.'s Supplemental Request for Judicial Notice in Support of Motion for Summary Judgment, or Alternatively, Summary Adjudication of Claims ("Defs.' Supp. RJN"), Exhibit A: WASC, *Handbook of Accreditation* 103 (2001).). More specifically, the "instructional site" seeking separate accreditation must have "substantial financial and administrative independence from the home institution," "a full time chief administrative officer," and the power "to initiate and sustain its own academic programs." (*Id.*)

**18.** See Braun Decl., Exhibit F: *WASC/ACSCU Policy on Transfer of Accreditation.*

nonmoving party. See *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed.R.Civ.Proc. 56(e). In addition, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979); see also *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 56 (2d Cir.1985).

### B. Whether the Reform Act Violates the Dormant Commerce Clause

Defendants contend that the student protection provisions of the Reform Act are unconstitutional under the dormant Commerce Clause doctrine because they facially (and unjustifiably) discriminate against interstate commerce.[19] The Commerce Clause provides that "Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States." U.S. CONST., art. I, § 8, cl. 3. "Although the Constitution does not in term's limit the power of states to regulate commerce," the Supreme Court

has "long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 127 S.Ct. 1786, 1792, 167 L.Ed.2d 655 (2007) (citing cases); see also *Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,* 545 U.S. 429, 433, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005) ("[T]he Constitution's express grant to Congress of the power to regulate Commerce among the several States contains a further, negative command, known as the dormant Commerce Clause, that creates an area of trade free from interference from the States" (citations, internal quotation marks, and alterations omitted)).

■ To determine whether a law violates the "dormant" aspect of the Commerce Clause, the court must first determine whether it discriminates on its face against interstate commerce. See, e.g., *id.; Fort Gratiot Sanitary Landfill, Inc. v. Mich., Dep't of Natural Resources,* 504 U.S. 353, 359, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992). In this context, " 'discrimina-

---

19. See Defendant DeVry University, Inc. and DeVry, Inc.'s Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defs.' Mem.") at 14–17. As a general rule, federal courts should not reach constitutional issues if they can be avoided. See, e.g., *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.,* 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) ("It is a fundamental rule of judicial restraint ... that this Court will not reach constitutional questions in advance of the necessity of deciding them"); accord *United States v. Feeney,* 984 F.2d 1053, 1056 (9th Cir.1993); see also 33 Charles Alan Wright & Charles H. Koch, Jr., FEDERAL PRACTICE & PROCEDURE: JUDICIAL REVIEW § 8363, at 257 (2006) ("A court should not feel too free in implicating constitutional rights. A well-established judicial practice has been to interpret statutes

so as to avoid, if possible, constitutional questions"). Defendants seek summary judgment on both constitutional and non-constitutional grounds. Their nonconstitutional arguments, however, which concern Daghlian's purported lack of proof of "damages," are applicable only to his class claim under the UCL, not his individual claims under the Education Code and the Business and Professions Code. Consequently, the court must reach defendants' constitutional argument however it resolves the non-constitutional issue. This is because even if judgment were entered for defendants on plaintiff's UCL class claim, the court would still have to assess whether Daghlian could individually recover damages under the Education Code.

tion' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Systems, Inc. v. Dep't of Envt'l Quality of Or.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). If a law facially discriminates against interstate commerce, it is subject to an exacting level of judicial scrutiny. See, e.g., *Or. Waste Sys.*, 511 U.S. at 99, 114 S.Ct. 1345 ("Our cases require that justifications for discriminatory restrictions on commerce pass the 'strictest scrutiny.' The [ ] burden of justification is so heavy that 'facial discrimination by itself may be a fatal defect,' " quoting *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). The burden of persuasion is on the statutory proponent, who must show that " 'the discrimination is demonstrably justified.' " *Gran-holm v. Heald*, 544 U.S. 460, 493, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) (quoting *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 344, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992)) (emphasis removed). This requires "concrete record evidence" that "nondiscriminatory alternatives [would] prove unworkable." *Id.;* see also *City of Los Angeles v. County of Kern*, 509 F.Supp.2d 865, 882 (C.D.Cal.2007) (Feess, J.) ("[D]iscriminatory statutes should be subjected to strict scrutiny and should be upheld 'only if the government can demonstrate both that the law serves a legitimate local purpose and that this purpose could not be served as well by available nondiscriminatory means,' " quoting *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)).[20]

■■■ The court concludes that the Reform Act facially discriminates against interstate commerce.[21] As amended, the

**20.** By contrast, laws that do not discriminate against interstate commerce face a more deferential standard. Under the *"Pike* test," "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' " *Or. Waste Sys.*, 511 U.S. at 99, 114 S.Ct. 1345 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)).

**21.** Although neither party addresses the issue, the court concludes that DeVry's provision of postsecondary educational services in California constitutes "interstate commerce" within the purview of the dormant Commerce Clause. "To determine whether the dormant Commerce Clause is applicable, [the court must] ask ... whether the activity regulated ... has a 'substantial effect' on interstate commerce such that Congress could regulate the activity.' " *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 (9th Cir.2002). The "activity" regulated here-postsecondary education-clearly meets this standard. See *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F.Supp. 688, 691 (D.Mass. 1996) (concluding that the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), did not control, and that congressional regulation of the accreditation of institutions of higher education was a constitutional exercise of its Commerce Clause power), aff'd, 142 F.3d 26, 33 (1st Cir.1998); *City University v. State, Office of Educ. Policy & Planning*, 126 Or.App. 459, 870 P.2d 222, 227 (1994) (en banc) (De Muniz, J., concurring in part) ("Plaintiff's activities clearly constitute 'interstate commerce.' Its operation of the Oregon-based facility necessarily involves communication between Oregon and Washington. Also, information regarding registration, student financial aid, curriculum review, testing and measurement crosses the Oregon–Washington border. Students, faculty and administrators move back and forth between the two states, as does money. In sum, plaintiff's educational activities involve the flow of people, money and information between the two states. That is sufficient to establish that plaintiff is engaged in interstate commerce" (footnote omitted)), aff'd, 320 Or. 422, 885

statute mandates that postsecondary educational institutions that have not obtained WASC accreditation comply with several student protection provisions, but exempts WASC-accredited schools from such requirements entirely.[22] At all times giving rise to DeVry's potential liability in this

case,[23] however, i.e., until June 2007, only postsecondary educational institutions based in California, Hawaii, and certain Pacific or Asian territories were eligible for WASC accreditation. As a result, even if DeVry (or some other regionally-accredited postsecondary educational institution

P.2d 701 (1994) (reserving opinion on the constitutional issue, which appellant did not challenge); cf. *In re Educ. Management Corp., Inc.*, 14 S.W.3d 418, 422–24 (Tex.App. 2000) (concluding that the provision of post-secondary vocational education implicated interstate commerce sufficiently to trigger application of the Federal Arbitration Act). Notwithstanding plaintiff's contrary suggestion, the fact that "there is a 'deeply rooted tradition of state and local control over education' " does not alter this conclusion. (See Plaintiff's Memorandum of Points and Authorities in Opposition to DeVry University, Inc.'s and DeVry Inc.'s Motion for Summary Adjudication, or Alternatively, Summary Adjudication ("Pl.'s Opp.") at 8 (quoting *Bennett v. New Jersey*, 470 U.S. 632; 635, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985)).) "Modern dormant Commerce Clause analysis is applicable to all police power regulation, including the core areas of health and safety protection." *Conservation Force*, 301 F.3d at 993 (collecting cases). In *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 42, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980), for example, the Supreme Court invalidated a state statute under the dormant Commerce Clause because it favored in-state over out-of-state entities in the investor services market. In doing so, the Court recognized that "as a matter of history and as a matter of present commercial reality, banking and related financial activities are of profound local concern." It further noted that "ever since the early days of our Republic, the States have chartered banks and have actively regulated their activities." Nonetheless, it stated that "it does not follow that these same activities lack important interstate attributes." *Id.* at 38, 100 S.Ct. 2009; see also *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 352–353, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (explaining that discriminatory laws are subject to strict scrutiny under the dormant Commerce Clause doctrine even "if enacted for the declared purpose of protecting consumers from decep-

tion and fraud in the marketplace," despite the "unquestionably … substantial interest" of the "several States" in "protecting their citizens from confusion and deception in the [marketplace]").

22. In determining whether a state law facially discriminates against interstate commerce, "the degree of a differential burden or charge on interstate commerce … is of no relevance…." *Oregon Waste Sys.*, 511 U.S. at 100 n. 4, 114 S.Ct. 1345 (internal quotation marks omitted).

23. DeVry has provided the Transferability Disclosure to prospective students since April 12, 2007. (See Defs.' Facts, ¶ 47; Pl.'s Facts, ¶ 47.) At the hearing on defendants' motion for summary judgment, plaintiff argued that WASC-accredited postsecondary educational institutions were exempted from the student protection provisions of the Reform Act only following a statutory amendment effective January 2004. Because plaintiff's individual Education Code claims accrued prior to this date, and because the UCL class period extends back to December 2001, plaintiff argue that the unconstitutionality of the Reform Act—in its most recently amended form—should not entirely preclude his or certain absent class members' recovery of damages. Plaintiff's argument is unavailing because the amendment to the Reform Act that became effective in January 2004 *broadened* the statutory exemption from the student protection provisions of the Reform Act to *all* WASC-accredited schools; the exemption had previously applied only to (I) public or non-profit WASC-accredited schools, and (ii) for-profit WASC-accredited schools that conferred degrees exclusively on the completion of a course of study of two or more years. (See 2003 Cal. Stats. ch. 340 (S.B.967).) As a result, the Reform Act did not become unconstitutional only on the effective date of Senate Bill 967 in January 2004.

based outside the WASC region that operates in California) [24] had otherwise been qualified for WASC accreditation, it could not have been accredited. As a result, it was required to comply with the student protection provisions of the Reform Act, even though similarly situated WASC-accredited California-based entities (such as for-profit Western Career College) [25] were not. To compete on equal terms with WASC-accredited institutions, DeVry would have had to operate its California campuses effectively as separate California-based subsidiaries. [26] The Commerce Clause, however, forbids states from requiring out-of-state entities " 'to become [ ] resident[s] in order to compete on equal terms.' " *Granholm*, 544 U.S. at 475, 125

S.Ct. 1885 (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963)). [27]

██ The fact that postsecondary educational institutions based in Hawaii and certain other territories can obtain WASC accreditation in addition to California-based educational institutions does not alter the court's conclusion. [28] "[L]egislation favoring in-state economic interests is facially invalid under the dormant Commerce Clause, even when such legislation also burdens some in-state interests or includes some out-of-state interests in the favored classification." *Jones v. Gale*, 405 F.Supp.2d 1066, 1081 (D.Neb.2005) (collecting cases), aff'd, 470 F.3d 1261, 1266

---

24. "Other non-WASC regionally accredited institutions approved to operate in California include: Columbia College Missouri, Park University, Central Texas College, Southern Illinois University Carbondale, University of New Haven, University of Phoenix, ... Webster University, Carnegie Mellon University, Central Michigan University, American Intercontinental University[,] and the Wharton School of the University of Pennsylvania." (Defs.' Facts, ¶ 22; Pl.'s Facts, ¶ 22 (conceding that these schools are non-WASC regionally accredited institutions approved to operate in California).)

25. See Defs.' Facts, ¶ 11; Pl.'s Facts, ¶ 11 (conceding that Western Career College is a WASC junior college exempt from the Reform Act).

26. For example, Touro University, which is regionally accredited by the Middle States Commission, resorted to the creation of a separate California corporation, "Touro Univeristy–California," in order to obtain WASC accreditation. (See Braun Decl., Exhibit H.)

27. In *Granholm*, the Supreme Court invalidated a New York statute that prevented out-of-state wineries from shipping wine directly to New York consumers unless the wineries established a distribution operation in New York. *Granholm*, 544 U.S. at 473–75, 125 S.Ct. 1885. In so holding, the Court observed

that New York also "discriminated against out-of-state wineries in other ways [in addition to its restrictive in-presence requirement]," given that "[o]ut-of-state wineries that establish the requisite branch office and warehouse in New York [were] still ineligible for a 'farm winery' license, the license that provides the most direct means of shipping to New York consumers." *Id.* at 475, 125 S.Ct. 1885. These additional differences, the Court stated, provided another basis on which to conclude that the New York regulatory scheme was facially discriminatory. *Id.* Like the New York regulations invalidated in *Granholm*, the Reform Act subjects postsecondary educational institutions operating in California to a variety of generally applicable student protection requirements, but offers an exemption from those requirements only to entities that are based in California, Hawaii, or certain Asian or Pacific territories. Like the Supreme Court in *Granholm*, therefore, the court "[has] no difficulty" in concluding that California discriminates against interstate commerce by selectively offering exemption from the student protection provisions of the Reform Act to in-state institutions (along with the small number of WASC-accredited schools based outside of California).

28. See Pl.'s Opp. at 5–6.

(8th Cir.2006) ("[T]he State Officials argue that because Initiative 300 does not expressly prohibit the owning of agricultural land by out-of-state citizens and does not exclude solely out-of-state corporations, it cannot be interpreted to discriminate facially against interstate commerce. We do not think that an interstate-commerce claim is precluded by the absence of an express prohibition on non-resident ownership or the fact that some Nebraska corporations ... may suffer a negative impact ..."), cert. denied, 549 U.S. 1328, 127 S.Ct. 1912, 167 L.Ed.2d 577 (2007).

In addition, the Supreme Court has repeatedly instructed that an inquiry into the effect of a state law may be necessary to determine whether it is facially discriminatory for purposes of the dormant Commerce Clause. See, e.g., *S. Cent. Bell Telephone Co. v. Alabama*, 526 U.S. 160, 169, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999) (considering the fact that, under an Alabama statute, "the average domestic corporation pays only one-fifth the franchise tax it would pay if it were treated as a foreign corporation" in concluding that statute was facially discriminatory under the Commerce Clause); *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194–96, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (considering the fact that a generally applicable state "assessment" on milk sales was used to fund subsidies that benefitted state dairy farmers in concluding that the assessment was facially discriminatory under the Commerce Clause); *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 268, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (considering the effect of an exemption from the Hawaii liquor tax for "okolehao and pineapple wine" in concluding that the exemption discriminated "on its face" against interstate commerce).[29] Here, by exempting WASC-accredited schools from the burden of complying with the Reform Act, the legislature has in effect conferred a substantial competitive benefit on California-based postsecondary educational institutions, as over ninety-one percent of WASC-accredited institutions are located in California.

It is also immaterial to the court's resolution of defendants' motion that some California-based educational institutions—i.e., those that are *not* regionally accredited by WASC—are subject to the Reform Act.[30] This is because these institutions are still eligible for WASC accreditation by virtue of their status as in-state entities, while DeVry and other non-WASC regionally accredited institutions are not. Cf. *Granholm*, 544 U.S. at 473–75, 125 S.Ct. 1885 (holding that a New York statute

---

**29.** See also *National Ass'n of Optometrists & Opticians v. Lockyer*, 463 F.Supp.2d 1116, 1123–24 (E.D.Cal.2006) ("While the language of a statute is certainly relevant to determining how that statute achieves effects in the real world, the absence of explicitly discriminatory language does not necessarily indicate an absence of discrimination. This is the essence of the concept of 'discriminatory effects,' which has been a feature of American constitutional law, not only in the Commerce Clause context, but in many other contexts since the landmark decision in *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 ... (1886)").

**30.** See Pl.'s Opp. at 3 ("The vast majority of schools operating in California are based in California, and are non-WASC schools. In fact, WASC schools make up only approximately 300 of the more than 3000 schools operating in California. The remaining non-WASC schools consist of nationally accredited, programmatically accredited, regionally accredited or unaccredited schools based in and outside of California. The Reform Act exempts [only] the 300 WASC schools from complying with its provisions [; it does not exempt California-based non-WASC schools]").

that required wineries to have a permit before directly shipping wine to consumers facially discriminated against interstate commerce where one of the requirements for obtaining such a permit was physical presence in the state, and placing no significance on the fact that some in-state wineries may have not applied for or been qualified to receive such a permit).

In addition, " 'any notion of discrimination [under the dormant Commerce Clause] assumes a comparison of substantially similar entities.' " *United Haulers Ass'n*, 127 S.Ct. at 1795 (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997)). Here, defendants argue[31]—and the court credits—that non-WASC regionally accredited postsecondary educational institutions operating in California (such as DeVry University) are substantially more similar to WASC-accredited postsecondary educational institutions operating in California (like Western Career College) than they are to non-regionally-accredited postsecondary educational institutions operating in California (like, e.g., the Advance School of Driving, Inc., the American Nanny College, Inc., California Healing Arts College, Lyles Bakersfield College of Beauty, the National Neon Institute, the Ojai School of Massage, or the Sierra Horseshoeing School).[32] Finally, as noted, "legislation favoring in-state economic interests is facially invalid under the dor-

mant Commerce Clause, even when such legislation also burdens some in-state interests." *Jones*, 405 F.Supp.2d at 1081 & n. 11. As a result, the fact that the Reform Act may burden some California-based postsecondary educational institutions does not alter the court's conclusion that the statute facially discriminated against interstate commerce.

■ Given the court's conclusion that the Reform Act has a discriminatory effect on interstate commerce, "the [law] is subject to strict scrutiny under which it is the [statutory proponent's] burden to show that the discrimination is narrowly tailored to further a legitimate interest." *Conservation Force*, 301 F.3d at 995; see also, e.g., *Hughes*, 441 U.S. at 337–38, 99 S.Ct. 1727 (explaining that the statutory proponent's burden is to show, under "the strictest scrutiny," that the regulation the "least discriminatory alternative" to advance a legitimate purpose). This Daghlian has failed to do. The court recognizes that the State of California has a legitimate interest in protecting its citizenry both from "misleading literature, advertising, solicitation, or representations by private educational institutions or their agents," and from "fraud, misrepresentation, or other practices that may lead to an improper loss of funds paid for educational costs." CAL. EDUC.CODE § 94705(d),(f). The court cannot discern, however, any reason why

**31.** See DeVry University, Inc.'s and DeVry Inc.'s Reply Brief in Support of Motion for Summary Judgment, or Alternatively, Summary Adjudication ("Defs.' Reply") at 6–7.

**32.** See Braun Decl., Exhibit E. By way of further illustration, the Reform Act subjects the Wharton School of the University of Pennsylvania—a non-WASC regionally accredited postsecondary educational institution that op-

erates in California (see *supra* note 24)—to its student protection provisions, but exempts the Haas School of the University of California and the Stanford Graduate School of Business. This difference in treatment ignores the fact that the state-based, WASC-accredited institutions are far more comparable to Wharton than, e.g., the Advance School of Driving, Inc.

California must employ discriminatory means to pursue these admirable goals.[33] Indeed, the California legislature itself recently conceded that it can "find[ ] no conclusive evidence to be used as a basis for determining whether institutions should be exempted from this chapter, and if so, under what circumstances."[34] Nonetheless, S.B. 823—which is currently pending before the California legislature and which would continue in effect many of the student protection provisions mandated by the currently inoperative Reform Act[35]— would perpetuate the complete exemption of WASC-accredited educational institutions from its requirements merely because "[WASC] has for more than 40 years been responsible for academic review and accreditation of all University of California campuses, California State University system campuses, and public junior or community colleges in California."[36] Under the dormant Commerce Clause, California's relative familiarity with WASC—the agency that accredits its public postsecondary schools—does not entitle it to discriminate against out-of-state postsecondary educational institutions when it has "no conclusive evidence" that those schools should be treated differently. Stated differently, the facially discriminatory exemption of WASC-accredited postsecondary educational institutions from the student protection provisions of the Reform Act is not narrowly tailored to further a legitimate state interest.[37]

For this reason, the court must enter judgment for defendants on plaintiff's class claim under the UCL, which is predicated on purported violations of the Reform Act, as well as on his individual claims under the Education Code.

## III. CONCLUSION

For the reasons stated, defendants' motion for partial summary judgment is granted. Given the court's disposition of this motion, plaintiff's motion for reconsideration of the remedies recoverable under the Reform Act—currently on calendar for hearing on October 22, 2007 at 10:00 a.m.—is denied as moot.

The court notes that, although denominated a motion for summary judgment rather than for partial summary judgment, defendants' pleading did not seek to have

---

**33.** There is no evidence in the record, for example, that units earned at WASC-accredited institutions are more transferable than credits earned at non-WASC regionally accredited institutions, such that only the latter should be required to give prospective students the Transferability Disclosure. This is not surprising. As noted, the California Joint Legislative Sunset Review Committee concluded in 2004, after reviewing the Reform Act, that its patchwork of exemptions and partial exemptions from its requirements was not justified by any "clear rationale." (See *supra* note 14.) Indeed, this conclusion is reflected in the Education Code itself, which states that each of the six regional accrediting agencies, including NCA and WASC, "possess[ ] similar quality and rigor in accreditation standards." Cal. Educ.Code § 94740.3.

**34.** See S.B. 823, § 4, Sec. 94700(e)(1). As a result, the bill proposes a study that would "assess accrediting bodies" to determine whether the legislature should "reexamin[e][ ] exemptions in the future." (*Id.*)

**35.** See *supra* note 11.

**36.** S.B. 823, § 4, Sec. 94700(e)(2).

**37.** Because the court concludes that the Reform Act unconstitutionally discriminates against interstate commerce under the dormant Commerce Clause, it need not address defendants' arguments concerning the constitutionality of the law under the First and Fourteenth Amendments.

judgment entered on plaintiff's individual claims under the UCL and FAL.[38] For this reason, in its tentative order granting defendants' motion, the court concluded that these claims should proceed to trial and set a pretrial conference for October 29, 2007. Following the hearing on defendants' motion, plaintiff filed a notice in which he represented that he had interpreted defendants' motion as directed to all of his claims, including individual claims not predicated on violations of the Education Code. Plaintiff may have intended by this notice to admit that he has no evidence to support the individual claims; the court, however, considers the notice too ambiguous to construe it as a voluntary dismissal or abandonment of the claims.[39]

Rather than trying claims that may potentially lack a factual basis, the court will permit defendants to file a second motion for summary judgment directed to plaintiff's individual claims under the UCL and FAL. This motion must be filed by October 29, 2007, and must address, *inter alia,* plaintiff's allegations that DeVry made affirmative misrepresentations on which he relied in enrolling and remaining enrolled. Any opposition must be filed by November 5, 2007. Any reply must be filed by November 12, 2007. Following resolution of this second motion for summary judgment (or in the event no motion is filed), the court will—if necessary—schedule new pretrial conference and trial dates. As a consequence, the court vacates the pretrial

conference currently set for October 29, 2007 at 9:00 a.m.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION

### I. BACKGROUND

On December 23, 2005, Saro Daghlian commenced this putative class action against DeVry University, Inc., DeVry Inc. (collectively "DeVry" or "defendants"), and certain fictitious defendants in Los Angeles Superior Court.[1] On January 11, 2006, plaintiff filed a first amended complaint. Plaintiff alleged that defendants failed to give the disclosure required by California Education Code § 94816, and misrepresented to prospective students that academic units earned at DeVry would likely transfer to other educational institutions so that students who sought further education at another institution would not have to earn the units anew. The complaint pled four claims: (1) assorted violations of the California Education Code; (2) violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750–1784;[2] (3) false advertising in violation of California's False Advertising Law ("FAL"), California Business & Professions Code § 17500; and (4) unlawful, unfair, and deceptive business practices in violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200.

On June 12, 2007, the court granted plaintiff's renewed motion for class certifi-

---

**38.** See Defendants DeVry University, Inc. and DeVry Inc.'s Notice of Motion and Motion for Summary Judgment, or Alternatively, for Summary Adjudication of Claims at 2.

**39.** If plaintiff intends to voluntarily dismiss his individual claims, he is directed to file an appropriate pleading effecting this result.

**1.** Defendants removed the action to federal court on February 17, 2006.

**2.** On July 20, 2006, the court dismissed plaintiff's CLRA claim as untimely.

cation,[3] certifying a class of all students who had enrolled and paid tuition at a California DeVry school since December 23, 2001. The court found plaintiff's claim for restitution and injunctive relief under the "unlawful" prong of the UCL suitable for classwide adjudication under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The claim was predicated on defendants' purported failure to provide enrolling students the written disclosure mandated by California Education Code § 94816 (the "Transferability Disclosure").

On July 16, 2007, defendants filed a motion for summary judgment. Defendants argued that the Education Code provisions on which plaintiff's individual claims and his UCL class claim were based were unconstitutional under the Commerce Clause, U.S. CONST., art. I, § 8, cl. 3, the Equal Protection Clause, U.S. CONST., amend. 14, § 1, and the First Amendment, U.S. CONST., amend. 1, as made applicable to the states through the Fourteenth Amendment. Defendants also challenged plaintiff's UCL class claim on the grounds that he had no evidence that he or any member of the UCL class was entitled to restitutionary relief, and that he lacked standing to seek injunctive relief.

On October 9, 2007, the court granted defendants' motion for summary judgment

on the UCL class claim and plaintiff's individual Education Code claims. It held that a portion of the Private Postsecondary and Vocational Education Reform Act (the "Reform Act"), 1989 Cal. Stat. ch. 1307 (codified as amended at CAL. EDUC. CODE §§ 94700–94999), was unconstitutional under the dormant Commerce Clause.[4] The court reached this conclusion after determining that the Reform Act facially discriminated against interstate commerce. As amended, the statute mandates that postsecondary educational institutions that have not been accredited by the Western Association of Schools and Colleges ("WASC") comply with several student protection provisions. It exempts WASC-accredited schools from such requirements entirely.[5] At all times giving rise to DeVry's potential liability in this case, only postsecondary educational institutions based in California, Hawaii, and certain Pacific or Asian territories were eligible for WASC accreditation. As a result, even if DeVry had otherwise been qualified for WASC accreditation, it could not have been accredited.[6] It was therefore required to comply with the student protection provisions of the Reform Act, even though similarly situated WASC-accredited California-based entities (such as for-profit Western Career College) were not. To obtain WASC accreditation and com-

---

3. The court denied plaintiff's first motion for class certification on March 14, 2007.

4. The Reform Act became "inoperative" on July 1, 2007, see CAL. EDUC.CODE § 94999, and would have been repealed on January 1, 2008 had not the California legislature "delete[d] or extend[ed] the dates on which it bec[ame] inoperative and [was] repealed." *Id.* On October 13, 2007, the governor signed an interim bill, S.B. 45, which extended some of the act's provisions into 2008 and 2009. See 2007 Cal. Stats. ch. 635.

5. In determining whether a state law facially discriminates against interstate commerce,

"the degree of a differential burden or charge on interstate commerce ... is of no relevance...." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of the State of Oregon,* 511 U.S. 93, 100 n. 4, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) (internal quotation marks omitted).

6. The same is true of other regionally-accredited postsecondary educational institutions that are based outside the WASC region but that operate schools in California.

pete on equal terms with WASC-accredited institutions, DeVry would effectively have had to operate its California campuses as separate California-based subsidiaries. The court thus concluded that the exemption for WASC-accredited institutions was unconstitutional because the Commerce Clause forbids states from requiring out-of-state entities " 'to become [ ] resident[s] in order to compete on equal terms.' " *Granholm v. Heald*, 544 U.S. 460, 475, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963)).[7]

On November 27, 2007, plaintiff filed a motion for partial reconsideration of the court's order under Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 7–18. Plaintiff contends that the court should reconsider the order because (1) newly discovered evidence has become available showing that DeVry was eligible for WASC accreditation at all times during the class period; (2) the court failed to consider that DeVry students could complete degrees in less than two years, and

thus students who enrolled prior to 2004 were purportedly entitled to benefit from the student protection provisions of the Reform Act; and (3) the Reform Act's severability provision compels a different outcome.[8]

## II. DISCUSSION

### A. Jurisdictional Effect of Notice of Appeal

On December 31, 2007, the court entered judgment for defendants, dismissing plaintiff's action in its entirety. On January 8, 2008, after plaintiff filed his motion for reconsideration, he filed a notice of appeal to the Ninth Circuit Court of Appeals. "As a general rule, a district court is . . . divested of jurisdiction once a notice of appeal has been filed." *Nikko Materials USA, Inc. v. R.E. Service Co., Inc.*, No. C 03–2549 SBA, 2006 WL 708652, *3 (N.D.Cal. Mar.16, 2006); see also *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("The filing of a notice of appeal is an event of jurisdictional sig-

---

**7.** In *Granholm*, the Supreme Court invalidated a New York statute that prevented out-of-state wineries from shipping wine directly to New York consumers unless the wineries established a distribution operation in New York. *Id.* at 473–75, 125 S.Ct. 1885. In so holding, the Court observed that New York also "discriminated against out-of-state wineries in other ways [in addition to its restrictive in-presence requirement]," given that "[o]ut-of-state wineries that establish[ed] the requisite branch office and warehouse in New York [were] still ineligible for a 'farm winery' license, the license that provide[d] the most direct means of shipping to New York consumers." *Id.* at 475, 125 S.Ct. 1885. These additional differences, the Court stated, provided a further basis on which to conclude that the New York regulatory scheme was facially discriminatory. *Id.* In its order on defendants' summary judgment motion, the court noted that, like the

New York regulations invalidated in *Granholm*, the Reform Act subjects postsecondary educational institutions operating in California to a variety of generally applicable student protection requirements, but exempts from those requirements only entities that are based in California, Hawaii, or certain Asian or Pacific territories. Following the lead of the Supreme Court in *Granholm*, the court had "no difficulty" concluding that California discriminated against interstate commerce by selectively offering exemption from the student protection provisions of the Reform Act to in-state institutions (along with a small number of WASC-accredited schools based outside California).

**8.** Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Reconsideration ("Pl.'s Mem.") at 2–5.

nificance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir.2002) ("jurisdiction is transferred from a district court to a court of appeals upon the filing of a notice of appeal").

■■■ The Ninth Circuit has held, however, that "[i]f a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A) [of the Federal Rules of Appellate Procedure]— the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." *Miller v. Marriott Int'l, Inc.,* 300 F.3d 1061, 1063 (9th Cir.2002). Motions listed in Rule 4(a)(4)(A) include motions for relief under Rule 60 filed within 10 days after the date judgment is entered. See FED.R.APP.PROC. 4(a)(4). Because plaintiff filed his Rule 60 motion within 10 days of the court's entry of judgment in defendants' favor, plaintiff's notice of appeal will become effective only upon entry of an order disposing of plaintiff's Rule 60 motion. See *Miller,* 300 F.3d at 1063–64. Consequently, plaintiff's notice of appeal does not divest the court of jurisdiction to decide the motion for reconsideration. See *id; Oluwa v. Secretary of State of Cal.,* No. 2:05–cv–1596–GEB–DAD–P, 2007 WL 527727, * 1 (E.D.Cal. Feb.16, 2007) ("Because the plaintiff's notice of appeal is not yet effective, this court has jurisdiction to rule on plaintiff's [Rules 59(e)(2) and 60(b)(6)] motion").

### B. Legal Standard Governing Motions for Relief from Judgment Under Rule 60(b)

Rule 60(b) provides that a court may relieve a party from the effect of a judgment or order "for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); ... or (6) any other reason that justifies relief." FED.R.CIV.PROC. 60(b).

■■■ Proper application of Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. See *House v. Secretary of Health and Human Services,* 688 F.2d 7, 9 (2d Cir.1982). A motion seeking such relief is addressed to the sound discretion of the district court. See *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *Matter of Emergency Beacon Corp.,* 666 F.2d 754, 760 (2d Cir.1981).

### C. Legal Standard Governing Motions for Reconsideration Under Local Rule 7–18

In this district, motions for reconsideration are governed by Local Rule 7–18, which states: "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." CA CD L.R. 7–18.

■■■ Rule 7–18 states that "[n]o motion for reconsideration shall in any matter repeat any oral or written argument made in

support of or in opposition to the original motion." *Id.; see also School Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993) (reconsideration is appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law). Whether to grant a motion for reconsideration under Local Rule 7–18 is a matter within the court's discretion. See *Johnson v. ITT Industries, Inc.,* 41 Fed.Appx. 73, 74 (9th Cir.2002) (Unpub.Disp.) (holding that the district court did not abuse its discretion in denying plaintiffs' motion for reconsideration because the motion was based on information known to plaintiffs at the time their motion for an extension of time to oppose defendant's summary judgment motion was denied, and it was therefore improper under the Local Rules).

### D. Plaintiff's Arguments

Plaintiff argues that the court should reconsider its grant of summary judgment because (1) newly discovered evidence demonstrates that there are genuine issues of material fact as to whether DeVry was eligible for WASC accreditation; (2) the court overlooked the constitutional implications of the fact that DeVry students could complete degrees in less than two years; and (3) the court should have severed the unconstitutional provision of the Reform Act to give effect to the act's student protection provisions.[9] The court addresses each argument in turn.

### 1. Newly Discovered or Purportedly Overlooked Evidence

#### a. Declaration of Ralph A. Wolff

In its order, the court noted that the parties disputed whether DeVry was eligible for WASC accreditation during the class period. Defendants adduced evidence that DeVry was not eligible for regional WASC accreditation because it is not based in WASC's region. Plaintiff countered with evidence that DeVry could have "transferred" its accreditation from the North Central Association Commission of Colleges and Schools ("NCA") to WASC.[10] Although the record was not entirely clear as to what was required to "transfer" accreditation, the court concluded that uncontroverted evidence showed that the "transfer" procedure was not available to DeVry until June 2007 at the earliest.

Plaintiff argues in his motion for reconsideration that newly discovered evidence shows DeVry was eligible for WASC accreditation throughout the class period. Plaintiff proffers the declaration of Ralph A. Wolff, President and Executive Director of WACS's Accrediting Commission for

9. *Id.*

10. Specifically, plaintiff submitted an unauthenticated copy of the *WASC/ACSCU Policy on Transfer of Accreditation.* The *Policy on Transfer of Accreditation* provides that "[t]he unit(s) within the WASC region seeking transfer must qualify under the Policy on Separate Accreditable Units" in the *"2001 Handbook."* That Handbook provides that "[a]n instructional site located in a region other than that of its home campus [may] seek separate accreditation in the region it exists if it functions independently of operational control of the parent college or university." The "instructional site" seeking separate accreditation must have "substantial financial and administrative independence from the home institution," "a full time chief administrative officer," and the power "to initiate and sustain its own academic programs."

Senior Colleges and Universities.[11] Wolff states that the WASC's "Policy Statement on Separately Accreditable Institutions" ("the Policy") determines the circumstances under which a regionally accredited institution based outside the WASC region can obtain WASC accreditation. He asserts that the Policy has never required that an institution based outside the WASC region and accredited by another regional accrediting association be incorporated in California.[12] Under the Policy, branch campuses and operations in one region (i.e., the "host" region, such as the Western States region) with parent corporations incorporated in another region (i.e., the "home" region, which in DeVry's case is the North Central region) may be separately accredited in the host region provided they meet the conditions outlined in the Policy.[13] Wolff maintains that the Policy "permitted DeVry University to seek WASC accreditation for all or part of its California operation even if it was not incorporated in California." [14]

Plaintiff argues that the "newly discovered evidence" contained in the Wolff declaration shows that the court "inaccurately concluded that WASC accreditation was offered to out-of-state schools only starting in 2007 and only upon acquiring California citizenship." [15] He maintains that "throughout the Class Period, it was WASC's policy ... that out of state institutions accredited by other regional accrediting associations need not be incorporated in the home region to be eligible for WASC accreditation. Significantly, DeVry could have sought WASC accreditation for its California schools without incorporating in California." [16]

 The court declines to reconsider its order based on the information contained in the Wolff declaration. Where a party seeks relief from judgment under Rule 60(b)(2) on the basis of newly discovered evidence, it must show that it "exercised 'due diligence' " in discovering the evidence, and also that "the newly discovered evidence ... [is] of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211 (9th Cir.1987) (stating the test in the context of both Rules 60(b)(2) and 59); see also *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 929 (9th Cir.2000) (stating the test in the context of a Rule 59 motion); *Hozie v. The Vessel HIGHLAND LIGHT,* CV 97–4199

---

**11.** Declaration of Janet L. Spielberg in Support of Plaintiff's Motion for Partial Reconsideration ("Spielberg Decl."), Exh. A (Declaration of Ralph A. Wolff ("Wolff Decl."), ¶ 1).

**12.** Wolff Decl., ¶ 11.

**13.** *Id.,* ¶ 12.

**14.** *Id.,* ¶ 13. Although Wolff asserts that a copy of the Policy is attached to his declaration, it was not attached to the copy of the declaration submitted to the court. The court, however, was able to locate the policy in the *2001 Handbook,* which can be found on the WASC website. The "Policy on Separately Accreditable Institutions" is the same policy cross-referenced in the *Policy on*

*Transfer of Accreditation* submitted by plaintiff in opposition to summary judgment. Paragraph 2 of that policy states that "[t]he unit(s) within the WASC region seeking transfer must qualify under the Policy on Separately Accreditable Units. (See 'Policy Statement on Separately Accreditable Institutions,' *2001 Handbook,* p. 103)." The Policy to which Wolff refers, therefore, was considered by the court in deciding the motion for summary judgment.

**15.** Pl.'s Mem. at 3.

**16.** *Id.*

ABC BQRX, 1998 WL 938587, *1 (C.D.Cal. June 1, 1998) (stating the test in the context of a Rule 60(b)(2) motion).

■ Plaintiff fails to show that he exercised due diligence in obtaining the WASC's Policy Statement on Separately Accreditable Institutions. Plaintiff asserts that the information contained in Wolff's declaration was not available to him prior to the date he submitted his opposition to defendants' motion and was not publicly available on the WASC website.[17] Wolff's declaration, however, indicates that the Policy has been included in the WASC Handbook since 2001.[18] A copy of the 2001 Handbook is available to the public on the WASC's website, as Wolff states, and the court was able to locate the Policy with little difficulty. Wolff also states that prior versions of the Policy were "continuously published" in WASC handbooks since 1988.[19] Given the ready public availability of the Policy, plaintiff's failure to explain why he was unable to identify and locate it prior to the hearing on the motion for summary judgment indicates a lack of due diligence.

Moreover, DeVry produced a copy of the Policy in response to plaintiff's argument regarding the possibility that it could have transferred its accreditation. This not only demonstrates that the information was publicly available, but that plaintiff had the opportunity to argue the import of the policy prior to the time the court entered summary judgment in DeVry's favor.[20] The fact that plaintiff sought an explanation of the policy from Wolff only after the court entered its order does not justify denominating the Policy and Wolff's declaration newly discovered evidence.[21]

Because plaintiff has failed to show that he exercised due diligence in obtaining

---

17. Plaintiff's Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Reconsideration ("Pl.'s Reply") at 3.

18. Wolff Decl., ¶ 11.

19. *Id.*

20. DeVry produced a copy of the Policy in reply to plaintiff's opposition to summary judgment. It noted that the Policy was referenced in, but not attached to, plaintiff's Exhibit F, the WASC *Policy on Transfer of Accreditation*. DeVry stated that it found the Policy in the 2001 WASC Handbook of Accreditation, which was available online. (Defendant DeVry University, Inc. and DeVry, Inc.'s Supplemental Request for Judicial Notice in Support of Motion for Summary Judgment, or Alternatively, Summary Adjudication of Claims ("Defs.' Supp. RJN"), ¶ 1.) Plaintiff thus had notice of the Policy prior to the court's entry of summary judgment.

At the hearing on defendants' motion, plaintiff asserted that WASC accreditation was available to DeVry throughout the class period. When asked what evidence supported this assertion, however, plaintiff's counsel cited only an exhibit showing that Touro University—a non-California-based institution—had acquired WASC accreditation in 2005. Plaintiff at no time referenced the Policy, despite having been put on notice of its existence both by virtue of references to in the *Policy on Transfer of Accreditation* and by DeVry's production of the Policy in reply. Plaintiff thus cannot demonstrate that he exercised due diligence in acquiring and interpreting the Policy.

21. Plaintiff's counsel, Janet Lindner Spielberg, has submitted a declaration stating that she spoke with WASC's Associate Director, Richard Winn, on several occasions prior to entry of the court's order on defendants' motion. (Spielberg Decl., ¶ 5.) Spielberg asserts that Winn confirmed that out-of-state schools were indeed eligible for WASC accreditation, but declined to provide evidence of this fact. (*Id.*, ¶ 7.) Wolff recalls that Winn told him he spoke with Spielberg on at least two occasions. (Wolff Decl., ¶ 6.) During those conversations, Winn and Spielberg discussed issues related to the accreditation by WASC of educational institutions that are based outside California and accredited by another regional accrediting association. (*Id.*) Wolff does "not believe that Ms. Spielberg derived a full and

Wolff's declaration and interpreting the WASC's Policy Statement on Separately Accreditable Institutions, the evidence provides no basis for reconsidering the court's earlier ruling. See *School Dist. No. 1J, Multnomah County, Or.,* 5 F.3d at 1263 ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence,'" citing *Waltman v. International Paper Co.,* 875 F.2d 468, 473–74 (5th Cir.1989) (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1557 & n. 4 (9th Cir.1987) (court did not abuse its discretion in refusing to consider affidavits opposing summary judgment that were filed late); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985) (evidence available to a party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment)); cf. *In re Kelley,* C 07–5122 RJB, 2007 WL 3070595, *5 (W.D.Wash. Oct.19, 2007) ("Appellant fails to demonstrate that the exercise of due diligence would not have resulted in the evidence being found at an earlier stage of the proceeding. As Judge Brandt concluded, the documents offered by Appellant were records dated at least four years prior to Appellant's motion, and were discoverable by due diligence"); *Graves v. Johnson Control World Services, Inc.,* C 05–1772 SC, 2006 WL 1308056, *1 (N.D.Cal. May 11, 2006) ("Evidence is not 'newly discovered' within the meaning of FRCP 59 if it was in the moving party's possession at

the time of trial or could have been discovered with reasonable diligence").

Plaintiff's lack of due diligence obviates the need to consider whether Wolff's testimony is of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co.,* 833 F.2d at 211; see also *Schlicht v. United States,* Civ 03–1606 PHX RCB, 2006 WL 229551, *1 (D.Ariz. Jan.30, 2006) (because plaintiff failed to show that his evidence was newly discovered and that he exercised due diligence to obtain it, "it is unnecessary for the Court to reach the third prong [of the *Coastal Transfer* test] by reexamining the summary judgment motions with the aid of Plaintiff's belatedly offered evidence"). The court notes, however, that Wolff's testimony would not change its ruling. First, contrary to Wolff's repeated assertion, the court did not hold that an out-of-state school had to be incorporated in California to secure WASC accreditation. Rather, it found that, as a general matter, a postsecondary educational institution had to be *based* in California, Hawaii, or certain Pacific or Asian territories to be eligible for WASC accreditation. The court was aware that even institutions not based in California could obtain WASC certification for their California campuses, but only if they operated those campuses "effectively as California-based subsidiaries" by ensuring that they had "substantial financial and administrative independence from the home institution," "a full time chief administrative officer," and the power "to initiate and sustain [their] own academic programs." The court determined that the Commerce Clause precluded such a prac-

accurate understanding of the [WASC's] policies in this area from those conversations."

(*Id.*)

tice, because it "forbids states from requiring out-of-state entities 'to become [ ] resident[s] in order to compete on equal terms.'" See *Granholm*, 544 U.S. at 475, 125 S.Ct. 1885 (quoting *Halliburton Oil Well Cementing Co.*, 373 U.S. at 72, 83 S.Ct. 1201).

Wolff's declaration and the Policy on Separately Accreditable Institutions do not change this analysis. Under the Policy, to be eligible for WASC accreditation, a DeVry location in California would be required to (1) have substantial financial and administrative independence from its home institution, including in matters related to personnel; (2) have a full time chief administrative officer; (3) be empowered to initiate and sustain its own academic programs; (4) meet, or have the potential to meet, the eligibility requirements of the WASC; and (5) have degree-granting authority in California. Although the Policy does not formally require incorporation in California, it requires, as the court previously found, that institutions like DeVry that seek WASC accreditation operate their California campuses as independent, California-based subsidiaries. This type of residency requirement violates the Commerce Clause.

### b. DeVry's Electronic Computer Technology Degree Program

Prior to the passage in 2004 of S.B. 967, which amended the Reform Act, the WASC exemption from the Reform Act's student protection provisions applied only to (i) public or nonprofit WASC-accredited schools, and (ii) for-profit WASC-accredited schools that conferred degrees exclusively on the completion of a course of study of two or more years. 2003 Cal. Stats. ch. 340 (S.B.967). Plaintiff argues that in considering the constitutional implications of S.B. 967, the court "neglected to take note of the fact that prior to 2004, WASC-accredited for-profit institutions that had any program that conferred a degree for a course of study that could be completed in under two years were treated *identically* with respect to the student protection provisions in the Reform Act as their non-WASC counterparts." [22]

Plaintiff contends that prior to 2004, DeVry had at least one program in Electronic Computer Technology ("ECT") that conferred a degree following a course of study that could be completed in under two years.[23] He thus reasons that, before 2004, WASC-accredited for-profit schools with degree programs that could be completed in under two years were subject to the student protection provisions just as DeVry was.[24] Consequently, plaintiff contends, the Reform Act did not facially discriminate against DeVry during this period, and all class members who enrolled in DeVry prior to 2004 should receive the benefit of the student protection provi-

---

22. Pl.'s Reply at 10.

23. Pl.'s Mem. at 5–6.

24. *Id.* at 6. Plaintiff asserts that DeVry advertised that its ECT degree program could be completed in five semesters. (*Id.* at 6 n. 6). DeVry acknowledges this, but argues that the program can be completed in less than two years only if the student elects to take summer school. (Opposition of Defendants DeV-

ry University, Inc. and DeVry Inc. to Plaintiff's Motion for Partial Reconsideration ("Def.'s Opp.") at 10). Because the program "could" be completed in less than two years, however, it would appear to be equivalent to the programs of WASC-accredited for-profit schools that conferred degrees upon the completion of a course of study of less than two years.

sions.[25]

■ Plaintiff seeks reconsideration on the basis that the court failed to consider the fact that DeVry's ECT degree program could be completed in under two years. He presented no evidence of this fact in opposition to summary judgment, however, and does not now argue that he was unable to bring the matter to the court's attention previously despite the exercise of reasonable diligence. Because plaintiff has failed to show that he exercised due diligence in obtaining evidence regarding DeVry's ECT degree program, the court declines to reconsider its order based on such evidence.[26] See FED.R.CIV. PROC. 60(b)(2) (providing that the court may relieve a party from the effect of a judgment or order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"); CA CD L.R. 7–18 (providing that a motion for reconsideration may be made only on the grounds of "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party

moving for reconsideration at the time of such decision, ... or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision"); cf. *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 929 (9th Cir.2000) ("In support of their 59(a) motion, Defenders provided an affidavit from Michael Terrio, Darling's coworker who was present during all three surveys, which stated that the saguaro cavity search conducted just prior to trial was 'not scientifically valid' and had been 'conducted in an unscientific manner.' Defenders have failed to show why Terrio's testimony could not have been obtained, with the exercise of due diligence, at the time of trial"); *Barber v. State of Hawaii,* 42 F.3d 1185, 1198 (9th Cir.1994) (the fact that "the [movant] offers no reason why the affidavits could not have been obtained prior to the day on which the summary judgment hearing was held precludes a finding that the district court abused its discretion in denying the motions").[27]

## 2. Severability Argument

In its order granting defendants' motion for summary judgment, the court found

---

25. Pl.'s Mem. at 6.

26. Plaintiff's argument misses the mark in any event. The mere fact that certain WASC-accredited for-profit schools might have been subject to the Reform Act's student protection provisions prior to 2004 does not obviate the constitutional problem identified by the court in its earlier order. The constitutional challenge DeVry mounted was a facial challenge, and it is clear that, as respects the exemption from the student protection provisions given to WACS-accredited non-profit schools and WASC-accredited for-profit schools that conferred degrees exclusively on the completion of a course of study of two years or more, the Reform Act discriminated against interstate commerce prior to 2004. Additionally, even had DeVry mounted as an applied challenge—which it did not—plaintiff's argument would, at most, indicate that the act did not discriminate against interstate commerce in

the conferring of degrees following less than two years of study. This would affect DeVry only to the extent that students enrolled in its ECT program completed their course of study in under two years. As respects the balance of its operations, DeVry was subject to the student protection provisions while institutions with comparable programs were not.

27. Because the court declines to reconsider its order based on the newly discovered or allegedly overlooked evidence presented by plaintiff, it need not address defendants' argument that plaintiff's motion is procedurally improper because he failed to request a continuance under Rule 56(f) so that he could present sufficient facts to oppose summary judgment. See FED.R.CIV.PROC. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a

that the provisions of the Reform Act exempting WASC-accredited institutions from the act's student protection provisions were unconstitutional. These exemptions are set forth in Education Code § 94739(b)(7).[28] The Reform Act also contains a severability provision—Education Code § 94998. It states:

> "The provisions of this chapter are severable. If any provision of this chapter or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application."

CAL. EDUC.CODE § 94998.

Plaintiff argues that the court committed "manifest error" by failing to consider and apply this severability provision.[29] He asserts that the court should sever § 94739(b)(7)(C), the provision exempting

WASC for-profit institutions from the student protection provisions.[30] He maintains that this result would cure the act's constitutional infirmity because then the student protection provisions "would apply equally to students attending WASC-accredited and non-WASC regionally accredited private for-profit career-oriented institutions doing business in California."[31]

■ Plaintiff is correct that the court did not consider the severability provision in ruling on defendants' argument that the statute was unconstitutional. Plaintiff, however, failed to raise this argument in opposing summary judgment when he could easily have done so. This alone would be grounds for denying plaintiff's motion, as the court ordinarily will not consider an issue raised for the first time when a party seeks reconsideration. See, e.g., *United States v. Foreman*, 369 F.3d

---

continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order").

**28.** Section 94739(b)(7) provides:
"The following are not considered to be private postsecondary educational institutions under this chapter:
(7)(A) Public institutions accredited by the Accrediting Commission for Senior Colleges and Universities or the Accrediting Commission for Community and Junior Colleges of the Western Association of Schools and Colleges.
(B) Institutions accredited by the Accrediting Commission for Senior Colleges and Universities or the Accrediting Commission for Community and Junior Colleges of the Western Association of Schools and Colleges that are incorporated and lawfully operating as a nonprofit public benefit corporation pursuant to Part 2 (commencing with Section 5110) of Division 2 of Title 1 of the Corporations Code and that are not managed by any entity for profit.
(C) For-profit institutions accredited by the Accrediting Commission for Senior Col-

leges and Universities or the Accrediting Commission for Community and Junior Colleges of the Western Association of Schools and Colleges.
(D) Institutions accredited by the Western Association of Schools and Colleges that do not meet all of the criteria in subparagraph (B) and that are incorporated and lawfully operating as a nonprofit public benefit corporation pursuant to Part 2 (commencing with Section 5110) of Division 2 of Title 1 of the Corporations Code, that have been in continuous operation since April 15, 1997, and that are not managed by any entity for profit. Notwithstanding this subdivision, institutions that meet the criteria in this subparagraph shall be subject to Section 94831, except subdivision (c) of that section, and Sections 94832, 94834, 94838, and 94985." CAL. EDUC.CODE § 94739(b)(7).

**29.** Pl.'s Reply at 10.

**30.** Pl.'s Mem. at 4.

**31.** Pl.'s Reply at 9.

776, 797 n. 12 (4th Cir.2004) (Gregory, J., concurring in part) (noting that it is a "well-established principle that arguments raised for the first time in a motion for reconsideration are generally deemed waived," and collecting cases); *Rosenfeld v. U.S. Dep't of Justice,* 57 F.3d 803, 811 (9th Cir.1995) ("The district court did not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse," citing *Schanen v. Dep't of Justice,* 762 F.2d 805, 807, 808 (9th Cir.1985), modified on other grounds, 798 F.2d 348 (9th Cir. 1985)); *Saunders v. Knight,* CV 04–5924 LJO WMW, 2007 WL 4258363, *1 (E.D.Cal. Dec.3, 2007) ("Reconsideration should not be used 'to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided,'" quoting *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del. 1990)); *Summitt Investigative Serv., Inc. v. Herman,* 34 F.Supp.2d 16, 26–27 (D.D.C.1998) ("Furthermore, it is a cardinal tenet of federal-civil practice that a court—trial or appellate—will not consider matters raised for the first time in a motion for reconsideration" (collecting cases)); see also *American Meat Institute v. Pridgeon,* 724 F.2d 45, 47 (6th Cir.1984) ("Defendants raised their issue regarding severability [of the unconstitutional provision] for the first time in their motion for reconsideration, filed in the District Court after the injunction had been issued. By bringing this issue before the District Court in such an untimely fashion, defendants effectively waived their argument on severability and have no basis to assign failure to sever as an error on this appeal").

 Because under California law, "the ultimate task in statutory interpreta-tion is to ascertain the legislature's intent," *In re First T.D. & Inv., Inc.,* 253 F.3d 520, 527 (9th Cir.2001) (internal quotations omitted), however, the court will consider plaintiff's severability argument to determine if reconsideration is appropriate. To determine whether the Reform Act's language is effective and the invalid provision is severable, the court looks to state law. See *Qwest Communications Inc. v. City of Berkeley,* 433 F.3d 1253, 1259 (9th Cir. 2006) (citing *Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996)). "The California Supreme Court has held that there are three criteria for severability under California law: the provision must be grammatically, functionally, and volitionally separable." *Valley Outdoor, Inc. v. County of Riverside,* 337 F.3d 1111, 1114 (9th Cir.2003) (citing *Calfarm Ins. Co. v. Deukmejian,* 48 Cal.3d 805, 821, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989)).

 "[A] provision is grammatically severable if it is distinct and 'can be removed as a whole without affecting the wording of any' of the other provisions." *Cox Communications PCS, L.P. v. City of San Marcos,* 204 F.Supp.2d 1260, 1270 (S.D.Cal.2002) (quoting *Hotel Employees and Restaurant Employees Intern. Union v. Davis,* 21 Cal.4th 585, 614, 88 Cal. Rptr.2d 56, 981 P.2d 990 (1999)). "It is functionally severable if it is not vital to the ordinance's operation and purpose." *Id.* (citing *Davis,* 21 Cal.4th at 614, 88 Cal.Rptr.2d 56, 981 P.2d 990). "Finally, it is 'volitionally' severable if it was not critical to the regulation's enactment." *Id.* (citing *Davis,* 21 Cal.4th at 614, 88 Cal. Rptr.2d 56, 981 P.2d 990).

 If each of these criteria is met, severance is ordinarily possible, "but only if the remainder of the enactment is com-

plete in itself and would have been adopted without the invalid portion." *Qwest Communications Inc.*, 433 F.3d at 1259 (citing *Sonoma County Org. of Pub. Employees v. County of Sonoma*, 23 Cal.3d 296, 152 Cal.Rptr. 903, 591 P.2d 1 (1979); and *Deukmejian*, 48 Cal.3d 805, 258 Cal.Rptr. 161, 771 P.2d 1247). "Although existence of a severability provision is not necessary to reveal a legislative desire to sever invalid provisions from valid ones, its presence does raise a presumption that such is the State's intent." *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 900 (9th Cir.2008).

Plaintiff argues that the exemption for WASC for-profit schools is grammatically and functionally severable because it can be " 'removed as a whole without affecting the wording of any other provision.' " [32] He also maintains that the provision is volitionally separable. More specifically, he argues that the legislature would have passed the statute even without the provision because "[w]ithout question, the legislature passed the Reform Act, *inter alia*, to protect students from unscrupulous practices." [33]

█ The provision plaintiff requests that the court sever from the statute is too narrow to solve the constitutional infirmity identified in the summary judgment order. As defendants note, "DeVry moved for summary judgment on the ground that the Reform Act impermissibly discriminated against out-of-state regionally accredited institutions in favor of California regionally accredited institutions." [34] The focus of the court's order was the facially discriminatory exemption of *all* WASC-accredited postsecondary educational institutions from the student protection provisions of the Reform Act, not just the limited exemption of for-profit WASC-accredited schools. The court determined that the provision of postsecondary educational services in California generally affects interstate commerce. It did not distinguish between for-profit and non-profit schools.

If the court were to sever solely the provision exempting for-profit WASC-accredited schools, as plaintiff suggests, the statute would still facially discriminate against out-of-state regionally accredited schools. Stated differently, all out-of-state regionally accredited schools, whether non-profit, for-profit, or public, would still be subject to regulatory burdens not imposed on their nonprofit and public WASC-accredited counterparts. Thus, if any provision is to be severed, it must be the entire WASC exemption.

The court concludes, however, that the WASC exemption as a whole is not volitionally separable. As noted, the exemption appears in a portion of the statute defining "private postsecondary educational institution" as "any person doing business in California that offers to provide or provides, for a tuition, fee, or other charge, any instruction, training or education" to postsecondary students. CAL. EDUC.CODE § 94739(a). After setting out this definition, the legislature identified seven types of education providers that are not "private postsecondary educational institutions." These include institutions offering education "solely avocational or recreational in nature," "postsecondary or vocational educational institutions established, operated, and governed by the federal government or by this state," nonprofit religious

---

**32.** Pl.'s Reply at 7.

**33.** *Id.* at 8.

**34.** Def.'s Opp. at 11.

institutions, and public, non-profit, and for-profit institutions accredited by the WASC. *Id.,* § 94739(b). The educational providers not considered "private postsecondary educational institutions" are exempt from the Reform Act's student protection provisions, which address student rights, tuition refunds, accurate disclosure of degree completion and job placement rates, and the transferability of credits. See, e.g., CAL. EDUC.CODE § 94816.

It is clear that § 94739's definitional provisions are a fundamental part of the statute. By defining the institutions that are subject to regulation, the section effectively establishes the duties, obligations, and liabilities under the Reform Act of all schools operating in California. The WASC exemption is an integral part of this scheme. Indeed, the importance of the WASC exemption is highlighted by the fact that in 2004, the legislature *broadened* the exemption to all WASC-accredited schools; previously, it applied only to (i) public or non-profit WASC-accredited schools, and (ii) for-profit WASC-accredited schools that conferred degrees exclusively on the completion of a course of study of two or more years. See 2003 Cal. Stats. ch. 340.

Severing the WASC exemption, as plaintiff proposes, would potentially require that nearly 300 California-based junior and senior colleges accredited by the WASC comply with the act's student protection provisions,[35] and expose them to liability for failure to comply. Such a result would disrupt the legislature's carefully crafted scheme of regulation and liability. Given that the WASC exemption is integral to the statutory scheme, the court concludes that it was critical to the statute's enactment. Severance of the invalid exemption, therefore, would not be acceptable to the legislature. See *Cox Communications PCS, L.P.,* 204 F.Supp.2d at 1270 (stating that a provision "is 'volitionally' severable if it was not critical to the regulation's enactment,'" citing *Davis,* 21 Cal.4th at 614, 88 Cal.Rptr.2d 56, 981 P.2d 990).

Plaintiff, moreover, overlooks the fact that the legislature's purpose in passing the Reform Act was not solely to protect students. Section 94705 states the legislature's intent "to promote the effective integration of private postsecondary education into all aspects of California's educational system and to foster and improve the educational programs and services of these institutions while protecting the citizens of the state from fraudulent or substandard operations." CAL. EDUC.CODE § 94705. The legislature also sought

"... to provide for the protection, education, and welfare of citizens of California, its postsecondary educational institutions, and its students by providing for all of the following: ...

(h) Recognizing and encouraging quality nongovernmental accreditation, while not ceding to that or any other nongov-

---

**35.** Defendants submitted evidence in support of their motion for summary judgment that "[a]ll but 9 of the 151 senior colleges and universities accredited by WASC are California schools." (Defendant DeVry University, Inc.'s and DeVry, Inc.'s Request for Judicial Notice in Support of Motion for Summary Judgment, or Alternatively, for Summary Adjudication of Claims ("Defs.' RJN"), Exhibit K: WASC Accrediting Comm'n for Senior Colleges and Univs., *Member Directory,* available at http://www.wascweb.org/2005_2006 SeniorDirectory.pdf (last visited Aug. 28, 2007)). Additionally, "[a]ll but 14 of the 140 WASC junior colleges are California schools." (Defs.' RJN, Exhibit L: WASC Accrediting Comm'n for Community and Junior Colleges, *Accredited Institutions,* available at http://www.accjc.org/list_accred_coll.htm (last visited Aug. 28, 2007)). Some schools accredited by the WASC—e.g., the California State University schools—may also fall within § 94739's exemption for schools operated by the state.

ernmental process the responsibility for state oversight for purposes of approval, if the accreditation process fails either to protect minimum standards of quality or to acknowledge legitimate innovative methods in postsecondary education." *Id.,* § 94705(h).

The legislature's desire to promote nongovernmental accreditation strongly indicates that, rather than passing the statute *without* the WASC exemption, the legislature might well have preferred to expand the exemption to *all* regionally accredited schools. This conclusion is reinforced when the court considers plaintiff's contention that the legislature exempted WASC-accredited schools because it believed that California students attending such schools did not need special protections. Given the legislature's intention to encourage accrediting associations, and the fact that severing the exemption provision would subject hundreds of California-based schools to new regulations and liability from which the legislature sought to shield them, the court is unable to conclude that the legislature would have enacted the Reform Act without the invalid WASC exemption. See *Qwest Communications Inc.,* 433 F.3d at 1259 (severance is possible only if the legislation "would have been adopted without the invalid portion," citing *Sonoma County Org. of Pub. Employees,* 23 Cal.3d 296, 152 Cal.Rptr. 903, 591 P.2d 1; *Deukmejian,* 48 Cal.3d 805, 258 Cal. Rptr. 161, 771 P.2d 1247). Accordingly, the court declines to reconsider based on plaintiff's newly raised severance argument.

### III. CONCLUSION

For the reasons stated, the court denies plaintiff's motion for partial reconsideration.